UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧

**UNITED STATES OF AMERICA,**

        **-v-**                                                     5:03-CR-81

**JOHN MURTARI,**
                    **Defendant.**

✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧

APPEARANCES:
HON. GLENN T. SUDDABY, United States Attorney
RICHARD R. SOUTHWICK, Assistant United States Attorney
100 South Clinton Street
Syracuse, New York 13261

BALDWIN & WANGERMAN
LAURENCE A. WANGERMAN, Esq., of Counsel
333 East Onondaga Street
Suite 400, Monroe Building
Syracuse, New York 13202
Attorneys for Defendant

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Defendant appeals (Dkt. No. 15) from the amended judgment of United States Magistrate Judge Gustave J. DiBianco (Dkt. No. 14) convicting him of five counts of trespass arising from picketing activity in the James M. Hanley Federal Building in Syracuse, New York ("Federal Building") and sentencing him to a total of 35 days incarceration.  The appeal challenges only the convictions on Counts 1 and 2.

### BACKGROUND

The superceding information (Dkt. No. 6) charged defendant with six instances of remaining unlawfully in the Federal Building, in violation of New York Penal Law § 140.05 and

18 U.S.C. §§ 7(3) and 13.[1]  Magistrate Judge DiBianco tried defendant and convicted him of Counts 1 through 5.  Magistrate Judge DiBianco concluded that on each occasion defendant had violated section 140.05 by knowingly remaining unlawfully on the fourteenth floor of the Federal Building in defiance of a lawful order to leave given by a Federal Protective Service Officer ("FPS Officer").  Magistrate Judge DiBianco determined that the FPS Officers' orders to leave the building were lawful because the applicable regulations required defendant to have a permit, which he did not have.

Magistrate Judge DiBianco also convicted defendant on Counts 3 through 5 on the additional ground of failing to obey a prior order of that court, issued on December 13, 2002, directing defendant to refrain from entering the Federal Building for the purposes of marching, picketing and protesting without a permit.

## DISCUSSION

On appeal, defendant challenges his convictions of trespass on Counts 1 and 2, stemming from incidents occurring on September 30, 2002 and November 4, 2002.  It is undisputed that on those two occasions defendant was carrying a placard and walking back and forth in the corridor on the fourteenth floor of the Federal Building.  He refers to his activities as "political speech" and does not claim to have been in the building to conduct business at any of the governmental offices open to the public.  Magistrate Judge DiBianco found the following: that on both occasions FPS Officers informed defendant that he was required to have a permit; that defendant admittedly did not have a permit; that the FPS Officers lawfully ordered him to leave; that

---

[1] "A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."  N.Y. Penal Law § 140.05.  Pursuant to 18 U.S.C. §§ 7(3) and 13(a), section 140.05 applies to defendant's presence in the Federal Building.

defendant refused to leave; and that his refusal to obey the orders rendered him guilty of trespass.

**Whether the Orders to Leave Were Lawful (Counts 1 and 2)**

Defendant contends that the orders to leave were not lawful because he was not required to have a permit in order to demonstrate in the corridor on the fourteenth floor of the Federal Building.  Thus, he argues, his refusal to leave was lawful, and he cannot be guilty of trespass.

The permit requirement in issue is contained in regulations implementing 40 U.S.C. § 581(h)(2).  The statute reads:

> (h) Cooperative use of public buildings.--
> \*\*\*
> (2) Occasional use of space for non-commercial purposes.  The Administrator [of General Services] may make available, on occasion,... an auditorium, meeting room, courtyard, rooftop, or lobby of a public building to a person, firm, or organization engaged in cultural, educational, or recreational activity ... that will not disrupt the operation of the building.

The applicable regulations, set forth in 41 CFR Part 102-74, Subpart D, entitled "Occasional Use of Public Buildings," read as follows:

> § 102-74.460  What is the scope of this subpart?
>
> > This subpart establishes rules and regulations for the occasional use of public areas of public buildings for cultural, educational and recreational activities as provided by 40 U.S.C. 581(h)(2).
>
> \*\*\*
>
> § 102-74.465  Is a person or organization that wishes to use a public area required to apply for a permit from a Federal agency?
>
> > Yes, any person or organization wishing to use a public area must file an application for a permit from the Federal agency buildings manager.

The succeeding sections contain specific information about the permit application process.

Defendant urges that his activities were not cultural, educational, or recreational, and that therefore he was entitled to engage in them without a permit.  Defendant bases this argument on

-3-

his reading of 41 CFR §§ 102-74.460 and 102-74.465 as requiring a permit only when public areas of a federal building are used "for cultural, educational and recreational activities," and not when public areas are used for other activities such as demonstrating. In other words, according to defendant, any non-disruptive, non-commercial use of public areas is allowed without a permit – unless the use is cultural, educational, or recreational, in which case a permit is required.

This Court agrees with Magistrate Judge DiBianco's rejection of this argument. Defendant's construction of the permit requirement is not supported by the applicable statute and regulations. The statute provides that the Administrator of General Services <u>may</u> make available a public area in a public building for cultural, educational, or recreational activity. *See* 40 U.S.C. § 581(h)(2). Nothing in the statute supports the view that such an area <u>must</u> be made available for other activities.

Consistent with the statute, the regulations' scope is to "establish[] rules and regulations for the occasional use of public areas of public buildings for cultural, educational and recreational activities as provided by 40 U.S.C. 581(h)(2)." 41 CFR § 102-74.460. Clearly, the regulations are intended to control the occasional use of the premises for the cultural, educational, or recreational activities authorized by section 581(h)(2). The regulations do not contemplate that the premises are available for additional activities beyond those authorized by section 581(h)(2). Thus, if defendant's demonstrating activities are viewed as cultural, educational or recreational activities, the regulations require him to have a permit; if his activities are not so viewed, the statute and regulations do not authorize him to engage in them at all in the covered areas.

Defendant also argues that Subpart D is unconstitutional. The Second Circuit has already held that the regulations do not offend the First Amendment, because they are viewpoint neutral

-4-

and reasonable in light of the purposes served by the Federal Building, a nonpublic forum. *See United States v. Murtari*, 120 Fed.Appx. 378, 380 (2d Cir. 2004). The Court finds no merit to defendant's other challenges to the regulations.

Accordingly, defendant was not legally entitled to engage in political activities on the fourteenth floor without a permit. Magistrate Judge DiBianco correctly held that the FPS Officers' orders directing defendant to leave the corridor of the fourteenth floor were lawful. Defendant has not raised a valid challenge to his convictions on this ground.

**Sufficiency of the Evidence (Count 1)**

Defendant also argues that there was insufficient evidence to support a conviction for trespass on Count 1, because he did not "knowingly enter[] or remain[] unlawfully in or upon premises." N.Y. Penal Law § 140.05. The term "knowingly" is defined as follows: "A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." N.Y. Penal Law § 15.05(2). According to defendant, the evidence does not support a finding that his conduct on September 30, 2002 was "knowing," because, although he was aware of the regulations, he believed that they did not require him to have a permit.

New York law provides that a person "is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless such mistaken belief is founded upon an official statement of the law contained in ... a statute or other enactment." N.Y. Penal Law § 15.20(2)(a). Where a defendant relies on an official statement of the law, the statement "must in fact authorize the conduct in question; a reasonable belief that the statement authorizes such conduct is insufficient." *People v.*

*Fraser*, 96 N.Y.2d 318, 326 (2001) (citation omitted).

Here, even accepting as true defendant's contention that he believed the regulations did not require him to have a permit, this belief does not relieve him of criminal liability for his conduct on September 30, 2002. There is no official statement of the law that in fact authorizes his conduct, and his own interpretation of the regulations does not justify his refusal to comply with the FPS Officer's lawful order to leave the building. The Court rejects defendant's challenge to the sufficiency of the evidence supporting Count 1.

## CONCLUSION

The Court has reviewed the issues raised on appeal and finds that they lack merit. It is therefore

**ORDERED** that the appeal (Dkt. No. 15) is denied and the amended judgment (Dkt. No. 14) is affirmed.

IT IS SO ORDERED.

April 19, 2007
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge